UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**ALEXANDER MALDONADO, JR.**                                                                                  **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 3:23-CV-P672-JHM**

**STEVEN CRAWFORD** *et al.*                                                                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court upon a motion for summary judgment filed by Defendants Steven Crawford and Christopher Bleul (DN 103). Plaintiff Alexander Maldonado, Jr., has filed a response (DN 107), and Defendants have filed a reply (DN 110). This matter is ripe for decision. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

### I.

Upon initial review of this action pursuant to 28 U.S.C. § 1915A, and based upon allegations Plaintiff made concerning his incarceration at Kentucky State Reformatory (KSR), the Court allowed First Amendment retaliation claims to proceed against Defendants KSR Officers Crawford and Bleul in their individual capacities. *See* DNs 10 & 25.

### II.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party

satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

### III.

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)). As to the third element, once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

**A. Defendant Crawford**

**1. First Retaliation Claim**

In the verified complaint, Plaintiff avers that on July 1, 2023, at 12:00 p.m., he was told to report for a urinalysis at 1:00 p.m. (DN 1, PageID #: 5). In the verified amended complaint, Plaintiff avers that Defendant Crawford "sabotaged" this urinalysis to prevent Plaintiff from being paroled, because Plaintiff had previously reported to KSR's Rape Elimination Act Coordinator and Internal Affairs Officer that Defendant Crawford "while performing another urinalysis test forced me to urinate with the door open facing the door & hallway." (DN 20, PageID #: 110). In Plaintiff's response to Defendants' motion for summary judgment, which was signed under penalty of perjury, Plaintiff somewhat differently avers that Defendant Crawford retaliated against him by sabotaging his urinalysis because Plaintiff had reported that Defendant Crawford had been "sexually inappropriate with him" during a previous urinalysis. (DN 107, PageID #: 571). In their

3

motion for summary judgment, Defendants seem to argue that this claim fails because Plaintiff has not presented any evidence that Defendant Crawford sabotaged his urinalysis.

For purposes of this Memorandum Opinion and Order only, the Court will assume that Plaintiff engaged in protected conduct when he reported to two prison officials that Defendant Crawford had conducted a previous urinalysis inappropriately. The Court will also assume that Plaintiff has presented evidence upon which a jury could conclude that Defendant Crawford sabotaged his urinalysis and that this sabotage constitutes an adverse action. Thus, the Court need only address the third element of this retaliation claim.

The third element "addresses whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). "[B]ecause of the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice." *Id*. Such "circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Id*. at 475-76.

Here, Plaintiff has presented neither direct nor circumstantial evidence of Defendant Crawford's retaliatory motive as to this retaliation claim. Thus, the Court concludes that Defendant Crawford is entitled to judgment as a matter of law on Plaintiff's first retaliation claim against him.

### 2. Second Retaliation Claim

In the verified complaint, Plaintiff states that on July 1, 2023, at 1:00 p.m., he arrived at the urinalysis testing area, told Defendant Crawford that he "needed to go badly," and asked that he be allowed to go first, but that Defendant Crawford ignored him even though he knew that

Plaintiff had kidney problems. (DN 1, PageID #: 5). Plaintiff states that he then asked another prison official to make Defendant Crawford test him first due to his kidney problems and that, in response, the prison official told Plaintiff to go back to the dorm to urinate and then come back. Plaintiff states that he instead went back to the testing area and that when Defendant Crawford saw him, he had Plaintiff cuffed and taken to the aforementioned prison official who immediately ordered him released. (*Id*.). Plaintiff states that he then filed a grievance against Defendant Crawford for sabotaging his urinalysis and that Defendant Crawford retaliated against him for filing the grievance by filing a disciplinary report against him. (*Id.*).

In support of their motion for summary judgment, Defendants submit the disciplinary report that Defendant Crawford filed against Plaintiff and the grievance that Plaintiff filed against Defendant Crawford after the urinalysis incident on July 1, 2023. The grievance submitted by Defendants shows that it was signed by Plaintiff on July 1, 2023, but that it not "received" by KSR officials until July 5, 2023. (DN 103-7, PageID #: 557). In the grievance, Plaintiff states that Defendant Crawford did not permit him to do his urinalysis even though Plaintiff "never refused" to take the test. (*Id*.). The grievance shows that it was rejected on July 5, 2023, because it was "related to a disciplinary action and therefore non-grievable." (*Id*., PageID #: 555).

The disciplinary report filed by Defendant Crawford indicates it was filed on July 7, 2023. (DN 103-2). Therein, Defendant Crawford described Plaintiff's conduct as follows:

> On 7-1-2023 at approximately 1:15pm, Lt. Steven Crawford and Officer Joshua Helfrich were conducting random urinalysis testing in the Administration Building in the Old Segregation Hallway. Inmate Alexander Maldonado's name appeared on a randomly generated urinalysis list. Inmate Alexander stated to Lt. Crawford that he really needed to use the bathroom and was not going to wait. Inmate Maldonado then left the urinalysis testing site. Inmate Maldonado then came back to the urinalysis site. Lt. Crawford asked Inmate Maldonado if he was going to stay for the test. Inmate Maldonado responded by saying, "I'm f-cking here aren't I! just do the test b-tch!" Lt. Crawford then gave inmate Maldonado an order to leave

5

> and explained to him that his presence would not be necessary due to Lt. Crawford documenting the refusal the first time Inmate Maldonado had left the testing sight.

(*Id*. at PageID #: 543).

As a result of this report, Plaintiff was charged with "Refusing or failing to submit to a drug urine test." (*Id*. at PageID #: 544). The report shows that this charge was dismissed by the adjustment officer after a hearing "due to security staff allow[ing] inmate to leave and return the testing site multiple times and not adhering to testing procedures." (*Id*. at PageID #: 543). Defendants also submit the disciplinary reports of two other inmates who were also charged with "Refusing or failing to submit to a urine drug test" regarding the urinalysis testing conducted on July 1, 2023 (DNs 103-3, 4, 5, & 6).

Defendants do not dispute that Plaintiff has satisfied the first and second elements of this retaliation claim. *See, e.g., Maben v. Thelen*, 887 F.3d 252, 264, 266-67 (6th Cir. 2018) (holding that the filing of non-frivolous grievances constitutes protected conduct and that that the issuance of a misconduct report can constitute an adverse action). Rather, Defendants address the third element only in their motion for summary judgment – causation. They argue that this retaliation claim fails because Plaintiff has failed to present evidence that Defendant Crawford was aware that Plaintiff had filed a grievance against him. They also argue that the two disciplinary reports they submitted, which show that Defendant Crawford filed disciplinary reports against other prisoners who refused to submit to a urinalysis, establish that Defendant Crawford did not treat Plaintiff differently from any similarly-situated prisoner when Defendant Crawford filed a disciplinary report against him.

Here, there is some slight circumstantial evidence of causation. The evidence shows temporal proximity between the protected conduct and the adverse action and the disciplinary report filed against Plaintiff was dismissed. Thus, the burden shifts to Defendant Crawford to

6

present evidence which shows that he would have filed the disciplinary report against Plaintiff even if Plaintiff had not filed a grievance against him. *See Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."). In the disciplinary report, Defendant Crawford indicates that Plaintiff used vulgar and abusive language after he asked Plaintiff whether he was going to stay for his urinalysis telling Defendant Crawford, "I'm f-cking here aren't I! just do the test b-tch!" Plaintiff does not dispute that he made this statement to Defendant Crawford or that using such language would have warranted Defendant Crawford's decision to file a disciplinary report against him. The Court believes the evidence shows that Plaintiff would have been charged with a refusal whether he filed a grievance or not. The evidence shows three inmates did not take the test that over a two-day period—one was Plaintiff. Crawford wrote up all three for refusing to take the test. The fact that Plaintiff was ultimately found not guilty of the charge does not prove that the charge was completely unjustified—it simply means that a hearing officer disagreed with Defendant Crawford's take on the matter.

There is insufficient evidence from which a reasonable jury could conclude that Defendant Crawford retaliated against Plaintiff for filing a grievance over the matter. Thus, the Court concludes that Defendant Crawford is entitled to judgment as a matter of law on this retaliation claim.

**B. Defendant Bleul**

In the verified amended complaint, Plaintiff avers that Defendant Bleul retaliated against him for filing this action by entering Plaintiff's cell and "lift[ing] the mat from the upper bunk in which I sleep and ripped out a sheet that blocking the lower bunk; then he ran out." (DN 20,

PageID #: 111).[1]  He states that when he became upset about what Defendant Bleul had done, Defendant Bleul placed him in "overtightened" handcuffs which cut his wrist and told him that he was "stupid for suing him and that [his] b-tch ass was going to pay." (*Id.*)

In their motion for summary judgment, Defendants argue that this retaliation claim fails on two grounds - because there is no evidence that Defendant Bleul knew about the instant lawsuit and because the actions Plaintiff claims Defendant Bleul took against him are not serious enough to constitute adverse actions.

Upon review of the evidence, the Court finds that Plaintiff has satisfied the first and third elements of the retaliation standard.  As to the first element, the filing of this civil-rights action constitutes protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).  And, as to the third element, Plaintiff has presented undisputed evidence that Defendant Bleul in effect told Plaintiff that he took the actions in question because Plaintiff had filed this lawsuit against him. (DN 20, PageID #: 111).

The second element is less straightforward.  An action is adverse if it would "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396-97. "While certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id*. at 398.  Acts that are more than "petty slights or minor annoyances" constitute adverse actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  "Thus, unless

---

[1] In their motion for summary judgment, Defendants state that Defendant Bleul actually entered Plaintiff's cell to remove a towel that concealed the bunk of Plaintiff's cellmate in order in to complete a count of inmates.  Defendants also state that Defendant Bleul was not aware that Plaintiff had named him as a Defendant this action.  However, Defendants present no evidence to support these assertions.

the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603 (quoting *Thaddeus-X*, 175 F.3d at 398).

Although it is a close call, upon review of jurisprudence in the Sixth Circuit on this issue, the Court concludes that no reasonable jury could conclude that the two actions taken by Defendant Bleul – ripping Plaintiff's bed sheet out from under him while he was sleeping and overtightening his handcuffs on one occasion causing a cut on Plaintiff's wrist – would not deter a person of ordinary firmness from filing a federal action. *See, e.g.*, *Moore v. Liewert*, No. 22-2056, 2023 U.S. App. LEXIS 21563, at *9 (6th Cir. Aug. 16, 2023) ("the denial of a single meal, even taking into consideration [the inmate]'s diabetes, is a *de minimis* event that would not deter a prisoner of ordinary firmness from engaging in protected conduct"); *Abraitis v. Moon*, No. 19-cv-2379, 2020 U.S. App. LEXIS 27827, at *8 (6th Cir. Sept. 1, 2020) ("preventing [a prisoner] from going to his work assignment on one day [does] not amount to an adverse action that would sustain a retaliation claim"); *Meeks v. Schofield*, 625 F. App'x 697, 701-02 (6th Cir. 2015) (affirming district court's determination that searches of a prisoner's work station or denial of access to the library on one occasion were *de minimis* conduct that did not constitute adverse action); *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-04 (6th Cir. 2011) ("A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard."); *see also Williams v. Crafton*, No. 1:22-CV-P86-JHM, 2023 U.S. Dist. LEXIS 242874, at *5 (W.D. Ky. Dec. 5, 2023) (holding that taking a Qur'an out of a prisoner's hand on one occasion and confiscating his bed roll for two hours on another occasion would not deter a person of ordinary firmness from filing a federal action); *Hatfield v. Daviess Cnty. Det. Ctr.*, No. 4:17-CV-P12-JHM, 2017 U.S. Dist. LEXIS 66337, *8 (W.D. Ky. May 2, 2017) (finding that "the alleged denial of a one-hour recreation period on one occasion

does not rise to the level of an 'adverse action'"); *cf. Campbell v. Mack*, 777 F. App'x 122, 135 (6th Cir. June 4, 2019) (holding that overtightening handcuffs to the extent that they caused injuries which required medical treatment at a hospital constitutes a sufficiently adverse action).

Thus, the Court will grant summary judgment in favor of Defendant Bleul on this claim.

### IV.

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 103) is **GRANTED.**

Date: March 20, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of Record
4414.011